Dale Allen of Clearing on behalf of the Appellants, Your Honor. Please proceed. Thank you, Your Honor. There are three issues that we brought before the Court, I believe, that are directly to which I wish to address, and I'm going to start with the positional asphyxiation portion of this, which was a pivot from the original taser pleadings in this case to a claim that the officer's use of excessive force resulted in positional asphyxiation which, under the Drummond case, is something that this Court has found in the past to be excessive force, a violation of a constitutional right and excessive force. This is not the Drummond case. More to the point, this is Gregory v. Maui, and this is behind Gregory v. Maui, not only not excessive but if this Court were to find excessive force, qualified immunity, in light of the facts and circumstances that align itself with Gregory v. Maui and align itself with the lack of precedent in this circuit or any other circuit as to how long someone might be in a prone position on their stomach before an officer should be on notice, they are putting them in a position of distress, particularly in light of a paramedic being present and a participant in the restraint. In the case of Gregory v. Maui, we have all the necessary elements of Graham as well as the totality of circumstances elements that this Ninth Circuit has set forth to use the force that was used here. Going to the positional restraint position, I do need to draw the Court's attention back to what precipitated this event, a man driving the wrong way on Highway 99 at a high rate of speed for nearly 48 miles, endangering the lives of countless motorists at rush hour, high on methamphetamine and alcohol as determined in the coroner's report. When he was stopped or he pulled over for a CHP officer who finally was able to get behind him, he did so into the median divider. That means he was in the fast lane. When that CHP officer approached him, Officer Kenzie, he began to fight Officer Kenzie necessitating Officer Kenzie's use of a baton. There was a struggle. There was then flight. We have a very serious crime in driving the wrong way. We now have felony assault on a police officer, at which point were said police officers Hart and Arellano arrive at the scene to attempt to assist Officer Kenzie and Officer Kenzie's arrest. So we have a very serious crime and now we have the threat and resistance of further harm that this man might cause. He jumps on the top of a cab of a Peterbilt stopped in the northbound lanes. All traffic now is stopped in the northbound lanes. There is a video here. This court has pointed out on numerous occasions that a decedent is not here to testify, but there is a video. A video supported by eyewitness testimony as to what he did. He got on top of the cab. The two officers on the cab try to assist him down. When you look back at the video that's part of the exhibit, you will see from approximately 15 seconds into the video to 45 seconds into the video, they're merely assisting him down until Officer Kenzie attempts to put him into an arm restraint. Again, the theme here is Officer Kenzie, the CHP officer exerting force. He then slips and falls to the pavement, but picks himself up and begins to run. He runs behind the truck. There is no dispute at this point in time that he is running away and he turns towards the median divider and gives every indication to Officer Hart that he is going to jump the median divider and run into the southbound lanes of traffic which are proceeding at 55 miles an hour. Regardless of the fact that he appears to be in some state of mental disturbance, which we know after the fact was intoxication by methamphetamine, the officers believed he was intoxicated in some form. Officer Hart had to make a split-second decision as to whether or not this man would run into opposing lanes of traffic, cause a catastrophic accident, harm not only himself but countless innocent motorists. Officer Hart deploys his taser the first time. I think it's a very accurate statement of the facts. My question is, once Mr. Epstein was handcuffed and shackled, why was there an immediate safety threat that justified pinning him down and sitting on him until he was asphyxiated? Your Honor, that's a very good point because it's a point that's not supported by the evidence in the version that the District Court captured it on page, I believe, 26 in their one paragraph. If you go back and look at the District Court put in its order, pages 6 through 8, it lays out actually what happened. And I do need to go back a little bit to address your very point. And again, it is supported by the video. After the first tasing, he gets up. He has to get tased a second time, so he goes down. At that point, Officer Hart gets on top of him to try and get him into handcuffs cause the taser doesn't appear to be working. Kenzie and Ariolano join him. They have to wrestle with him for several minutes during which two more tasings take place before they finally are able to handcuff him in front of him and roll him on his back, not in a prone stomach down position. The three of them with Officer, I'm sorry, the three of them with Mr. Abstin are lying on the ground. There is a gap in the video. The video resumes right around that point. And you will see at approximately one minute and four seconds that he is on his back, not on his stomach. And he is handcuffed in front of him and his feet are loosely bound by a handcuff. And when you start watching the video at that point, and this is all undisputed, you see two officers restraining him. Officer Hart has a red hat. Officer Dahlia has khaki pants and a blue shirt. And he's, Officer Dahlia is actually kneeling on his right thigh, not on his face up. Officer Hart has his left foot propped against his left thigh. He's not leaning on him. For the next 30 to 35 seconds Mr. Abstin continues to struggle and at one point finally props himself up. As he props himself up, he then is facing the camera and he has a bloody face where Officer Hart grabs his head because he has been swinging and banging his head against the concrete, which is part of why he has a bloody face. Undisputed testimony. And at which point two CHP officers come in. He's kicking and they roll him onto his stomach. Officer Dahlia rests his foot on Mr. Abstin's buttocks for five seconds at that point while he is now on his stomach in the classic positional asphyxiation situation. Officer Hart moves to his shoulders from the video and gets his knee, certainly in a pressing position, down. But two CHP officers and the paramedic Olsek arrive and they begin to administer the restraint on this man in a prone position. For the next 67 seconds Officer Hart is near his head. At which point another CHP officer arrives, takes his spot. The total amount of time two Merced officers, who are the defendants in this appeal, are on him are five seconds by Dahlia in the prone position on his stomach and 67 seconds by Hart. Hart gives his spot up to a paramedic who has been monitoring this and participating in this for nearly a minute at that point. Officer Hart, who is not more trained than first aid, is giving himself over to a medically trained person who apparently didn't believe this was a situation that called for a worry about this man's physical distress. He goes into cardiac distress about three minutes later. I would point this court to your very point, Your Honor, that when we're dealing with the use of force, the use of force is applicable to that where a resisting or threatening situation is occurring and he was obviously continuing to resist during the point in time the Merced officers were involved. If you watch the video you will continue to see him resist during that. I watched the video, but I couldn't see how he possibly could pose a safety threat when he's handcuffed and shackled. And, Your Honor, I can't disagree that he couldn't, but he was still resisting. This is why I take this to the Gregory vs. Maui case. Because he's still resisting, maybe you could apply some force, but the question is, was this amount of force justified? And I think your narration is a reasonable one, but on the other hand, the record also contains evidence and opinions to the contrary. In other words, just like Dr. Spitz comes to an entirely different conclusion, he looks at the same videotape. And, Your Honor, I think it's a obviously the district court thought it was a controverted issue of fact, right? Well, Your Honor, the issue of fact, but I would point out that in Dr. Spitz's case, he also laid it and overlaid it to other things that were going on, including the Taserines. The Taserines were justified. And I didn't ask at the beginning, I would like to reserve two minutes, so I believe I have about three minutes left. The point, though, is that if you are going to look at this in a positionless asphyxiation case, we have to look at it also as a qualified immunity for Officer Hart and Officer Dahlia, who are the only two defendants here. The plaintiffs dismissed Officer Kenzie. I don't know why. They never brought suit against the other CHP officers, who were the ones for nearly three minutes in addition, or after Hart lets go, or pressing down on him. They don't bring it against the paramedic, who's the medical professional there not dealing with that issue. And again, I have to ask the court to consider that if we're going to be dealing with whether this is positionless asphyxiation or not. In the Drummond case, you had an unresisting, compliant man, who was bipolar, schizophrenic, and not posing a threat to anybody, even at the time they put him on the ground. The officers stayed on him for 20 minutes. In the Gregory case, we had a crime, we had a man tackled, we had a man resisting, we had a man handcuffed. Yet the officers got off him, even though he was still struggling somewhat. And yet in the Gregory case, we don't have any time sequence. We don't know, was that five minutes, three minutes, a minute and a half, ten minutes before he goes into arrest. But they had to restrain him. And in the Gregory case, wasn't Mr. Gregory still able to walk around? No, at least in terms of the facts as I know them from the ruling. Mr. Gregory, once he was on the ground and the officers had finally got him into handcuffs, was left lying on the ground and the officers got off him. But we don't have a qualified immunity at least, and I still don't believe what Hart and Dahlia did was unreasonable in terms of restraining someone to the point that he gets off him, he relinquishes control to a paramedic and three other CHP officers. How then could he be held responsible for this in deferring to a paramedic's care? It aligns itself, and at least as a qualified immunity argument, where is it now that we can tell an officer once a person's in a prone position, face down and you're applying pressure, enough's enough, get off. You can't do it any longer. Is it two minutes, five minutes, twenty minutes? Drummond says it's twenty minutes. Gregory doesn't give us any time sequence but suggests it's only a few minutes. Dahlia was there for five seconds on him, Hart was there for sixty-seven seconds on him. That is part of the record. Your Honor, I'd like to reserve the last couple of minutes, and I'm more than happy to take questions. Thank you. The first issue I think to address may be... You are Mr.? Mr. Nissenbaum. Okay, thank you. Council raises an interesting point about the paramedic. The paramedic's testimony is before the court. The paramedic testified that once he arrived at the scene, it was only a few seconds that he was involved in the restraining process when Mr. Abstin stopped fighting. Now, Mr. Officer Hart is next to the paramedic. He's in the position he was before the paramedic arrived, and you can see him using his knee, putting pressure over the back of the... well, the back shoulder area with his knee. It looks like very severe pressure. And I think council has a time frame, right? It's over a minute that he's doing that, and during that time the paramedic is there for a large portion of it and, again, for virtually most of that minute, and apparently Mr. Abstin is not involved in the restraining period. According to Olzak, it was only a few seconds that Mr. Abstin was resisting once he arrived at the scene, once he got involved in the restraint. And so you have an excessive restraint here. I thought Mr. Abstin... I thought there was somewhere in the record that Mr. Abstin was on his stomach, was held down by several officers. This is after  but he tried to headbutt people during that time period. I'm not... I would say that that is not supported in the video. What you see in the video is Officer Hart grabbing Mr. Abstin by the head after he's... by the hair. Was there testimony to that effect? There is testimony that Officer Hart was doing that to prevent him from headbutting people. I'm not certain that it's clear that he was trying to headbutt anyone. What the officers all say is that Mr. Abstin was kind of flailing. He was flailing. He didn't appear to be doing anything in an intentional manner. He wasn't taking aim at people. He was consistent with what they observed. And they believe that he was in the midst of a mental emergency, whether drug-induced or not. They did recognize that. Certainly Officer Hart recognized that. Officer Arellano recognized that. And Officer Kenzie did as well. So what he was doing was flailing, and he's trying to control the head. And you see him, as they turn him over, you see Officer Hart grabbing Mr. Abstin by the hair. Excuse me, Counsel. How does Mr. Abstin's erotic behavior, which suggests some mental impairment, how does that inform the analysis there? Counsel has raised several issues about the apparent intentional deadly threat that Mr. Abstin posed prior to this encounter. That Mr. Abstin was driving the wrong way down the freeway. And that's true. He was driving the wrong way down the freeway. Of course, traffic had been stopped at that point. He pulled over. It goes to that. Is this a person who's trying to hurt people? That intention is not there. And that's what the officers see. What they see is that that's why that's important. It's not a person who they're trying to stop. I'm sorry. I'm having trouble with that. You think that the officers who see someone going the opposite way in rush hour traffic is not trying to hurt anybody? And when he comes off, I mean, the behavior described after he pulls over is rather remarkable. I mean, I don't know if he's strong in and of himself without the inducement of any drugs or alcohol or whatever, but this was a pretty remarkable display of force by Mr. Abstin. Would you not admit? I'm not saying it wasn't. I do agree with that. What I'm saying is that they recognize after, of course, he's pulled over. Kenzie doesn't know before he's pulled over what's going on with Abstin, but ultimately once he's on top of the hood, once he's on top of the cab in the video. And the cab of the video, the truck is right on the highway, is it not? Correct. But he's not in possession of any vehicle. He's not attempting to drive any vehicle. But there's all kinds of vehicles all around. I'm not saying that he ought not be detained. He clearly should be. He clearly should be. And I don't, what I'm saying is that there's an exaggeration of the threat. When it's argued that he was trying to use lethal force, it doesn't appear that way. He pulled over and he did that. But I think that that is really a tangential issue because at the end of the day, the force is measured at the time it is used. And it is the restraint and the tasing during the restraint. That is the issue in the case. The first tase that was the deployment mode that caused Abstin to fall, qualified immunity was granted for that. And we don't have an argument with that at all. But I want to, before my time runs low, address a couple of points about the other cases, Gregory and Marquez in particular. Those are not restraint asphyxiation cases. You don't have anyone opining that the cause of death there was asphyxiation. And that's what's critical. Because asphyxiation is an indication of excessive force. When the officers restrain him in a manner that kills him. And Hart is clear to me kind of the lead person in that restraint. You clearly have the facts for an asphyxiation and unreasonable asphyxiation case. When you look at the video, there doesn't appear to be any movement by Mr. Abstin after about 2.33 or so into the video. And what movement there is after he's turned onto his stomach, you see his leg move a little bit. Again, I'm talking about after he's turned onto his stomach. But not much more than that. You don't see the kind of violent restraint that is described. With respect to Marquez, so distinguishing from Gregory and Marquez, again, Marquez, the officers encounter a situation where a person is performing an exorcism. They come into a room that's battered with blood. And the man is holding a small child in his lap in a chokehold. And so you have a situation where you have a much greater danger that exists. At the time that Mr. Abstin is being restrained in the median of the freeway, he is not a danger to traffic on the other side. He is not a danger to any traffic on his side. Traffic has been stopped. Essentially, what you have is a restraint that was unreasonable, a restraint that killed him, a restraint that was performed in an excessive manner. That's what the court ruled can go forward. And certainly it is corroborated by Dr. Spitz. Was the law clearly established at the time? With respect to the restraint? Yes. Clearly. It's on a par with Drummond. You don't need to have identical facts. And certainly the level of resistance that Mr. Abstin was putting up during the restraint, that's the issue. That's the issue. That's a factual determination for a jury. On the other side of it, the comparison to, for example, Brian B. McPherson, where you have one TAS, you don't have any type of restraint or lethal restraint that's involved, is in a posit. It's distinguishable on the facts. You certainly don't have multiple TASings. The other thing is, of course, TASER had issued warning bulletins about multiple TASings, warning against multiple prolonged TASings. That's what's interesting about Marquez. It says those warnings were sufficient. And those warnings came out in 2006. So it puts the officers on notice that multiple prolonged TASing of an individual, especially one who exhibits the symptoms of a, I think they call it sudden in custody death disorder, that's what TASER calls it anyway, that one who exhibits those symptoms may be at a higher risk of death when the TASer is used multiply or prolonged. And that's what we have here. Now, Officer Arellano, she actually announced, so the other point is the Merced officers were aware with respect to the TASER use. They were aware that they should not use it against a person who had an indication of heart surgery, as Mr. Avston had. So when Officer Arellano announces, according to Officer Kenzie anyway, when she announces at the cab, don't TASe him, he's got a scar on his chest, it is significant. It reflects an awareness, a notice that multiple prolonged TASing could potentially be lethal. I think a jury can make the leap that they were in fact aware. You, in terms of whether the law was clearly established on this, what's it called, the amount of force you can apply in terms of a positional asphyxiation situation. The only case that comes anywhere close to this Drummond case, right? Sure. Which involved in some ways it's a similar situation, but Drummond I don't think involved what I would call this in the degree and the kind of resistance that was offered by the decedent in this case. Your Honor, I would say that there may be more resistance here. I'm sorry, I didn't mean to cut you off. No, go ahead. There may be more resistance here, but that's not to say that it's a factual dispute as to what level of resistance there was. I'm trying to get at the issue of whether the law was clearly established. The law is clearly established in a general sense that you can't overuse sitting on somebody to suffocate them. That's fine, but the question is when you get down to more specific situations, that's such a general proposition. I don't know that we could say the law was clearly established that in this factual circumstances it was clearly established that they shouldn't have sat on him and restrained him for the length of time that the officers did. Again, that's why the paramedics statement is important. It goes really to obviously the level of resistance that's occurring. It goes to the manner. Drummond notifies officers that they can in fact in restraining a person use force that would be lethal, that it is possible to do that. Whether it's justified depends upon the facts. So when they begin using force that when the restraint continues and it is prolonged well past the extent where he's struggling, when it is prolonged according to the paramedic, after the paramedic arrives a few seconds later he's not resisting, there's no resistance, and yet you have his back pushing down in really what is kind of the classic compressive asphyxiation position and that's what you're looking at there. And so I think that any officer any reasonable officer, every reasonable officer is aware of Drummond every reasonable officer is aware that they can kill somebody by using this kind of compressive force. So if the person is putting up huge, huge, huge resistance, then it may be justifiable. Whether Mr. Abstin was at the time that he was being restrained, putting up that kind of resistance is a different question and that is a jury question. And isn't that I grant you, you could look at it as a jury question, but also you could look at it as saying the law was not clearly established, that it applies in that situation. I think what that would mean is that an officer would, using a compressive, lethally compressive force against a person who is doing absolutely nothing if you limited Drummond to those facts Well, absolutely nothing, I don't know if And also, didn't Drummond say to the officer I can't breathe, I can't breathe, he was communicating to them The officers were, reasonably when you look at it, likely could have been more aware than in this situation especially when you look at the behavior leading up to it Actually, you make a great point there, because what happens is the lack of speech, the lack of movement, the lack of communication that occurs and you can see it in the video, the lack of movement by Mr. Abstin literally from about 2 20 onward into the video, during the restraint, the lack of movement while Officer Hart is restraining him, totally consistent with what Olzak testifies to, indicates that there's a problem here, indicates that, wait a minute, that is a problem, it is the same type of signal, the same type of notice as saying I can't breathe, a person who can't breathe, sometimes they can't talk at all, in fact I've heard officers quite often testify, well he could talk so he could breathe, I don't agree with that either Thank you I'm going to try and deal very quickly with the Olzak issue, because it is not accurate If you look at the videotape, you will see that Mr. Olzak, who is in a blue jumpsuit and he has a different distinguishing emblem on the back he has black hair, and you will see the CHP officers with CHP on the back of their blue jumpsuits, and you see Officer Hart with a red hat Mr. Olzak, the paramedic, was there at 2.04 approximately and he actually then gets off him at 5 minutes and 35 seconds he was mistaken in his testimony, he didn't have an opportunity in the depot to be examined by the video, Mr. Abstin did not show that, so he offered that he was there only a few seconds that is inaccurate, he was there 3 minutes, nearly 3 minutes longer in terms of his care and his support of the decedent, then Officer Dahlia, and he was there nearly 2 minutes longer resting his leg on the decedent along with the CHP officers, then Officer Hart Was that evidence before the jury? We haven't had a jury trial, Your Honor Summary judgment, I'm sorry, but was that evidence before the court? It was before the court, everything in this record has been before the court that's an inaccurate memory of Mr. Nissenbaum on how he has represented this, it is in the Statement of Undisputed Facts he has raised this testimony as opposed to what the video actually shows, I wish to try and jump in quickly with my last minute So you say the video shows that Mr. Abstin is moving after, at that point, after he's shackled and handcuffed? It is interesting that Mr. Nissenbaum raises that there's lack of movement from 2-20 onward, there's actually some movement by Mr. Abstin from 2-20 up to the time that Officer Hart gets off, it's discreet, it's not any longer significantly pronounced resistance, but he's got a paramedic, 3 chippies and Officer Hart up near his shoulders or head holding him down, so there's movement indicating he's alive, there's movement indicating that he is aware of his surroundings I can't say that it's significant, I wouldn't argue to this court it was significant you can see it in the video and judge for yourself. The key here though, and I go to his Honor's point, is that we don't have a standard for when an officer should stop a prone position of pressing weight on him and yet Officer Hart did, he did get off 60 seconds, 67 seconds later, while other officers who are not defendants in this case a paramedic who's not defendant in this case are not present and I would propose to this court if there was a case that would suggest that there's qualified immunity at a minimum, it's this lack of any definition outside of Drummond, which was nearly 20 minutes and the fact that a paramedic, a medical professional is continuing to while they're pressing weight on him, after the officer defendant has released his weight, following his own protocols. If the court would like me to address the tasers, I am more than happy to and I could do it quickly but I would leave that to the court. Thank you. Okay, thank you. Appreciate it. Thank both parties for their argument. The case is now submitted.
judges: Nelson, Tashima, Murguia